UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LORINE M. WATSON,
as Next Friend of PHILIP RONALD
WATSON, JR, a Minor,

       Plaintiff,

                                     Civil No. 09-12573
                                     Hon. John Feikens

       v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.
_____

**OPINION AND ORDER VACATING
MAGISTRATE JUDGE HLUCHANIUK'S ORDER (Dkt. 64),
SUSTAINING IN PART AND OVERRULING IN PART
NON-PARTY KURT WHEELER'S OBJECTIONS (Dkt. 65), AND
<u>DENYING STATE FARM'S MOTION (Dkt. 45)</u>**

**I. INTRODUCTION**

This is a diversity case arising under the Michigan No-Fault Automobile Insurance Act,

M.C.L. 500.3101, et seq. (the "No-Fault Act").  Before the Court is Defendant State Farm Mutual

Automobile Insurance Company's Motion To Compel Non-Party Kurt Wheeler To Answer

Questions At Deposition.  (Dkt. 45).  Non-Party Dr. Kurt Wheeler ("Dr. Wheeler")[1] and Plaintiff

each filed a Response. (Dkt. 53, 54).  Defendant filed a Reply addressing both Responses. (Dkt. 56).

This case has been referred to Magistrate Judge Michael Hluchaniuk for all pretrial matters.  The

_____

[1]Dr. Wheeler works for and holds an ownership interest in Northern Michigan Reintegration
Services ("NMRS").  It appears that Dr. Wheeler's involvement in this case is as a treater and/or
owner of NMRS.  For simplicity, and because State Farm moves to compel <u>Dr. Wheeler</u> to answer
certain questions, the Court will continue to refer to Dr. Wheeler, although the more appropriate
reference indeed may be NMRS.

Magistrate Judge heard argument on Defendant's Motion, and on April 2, 2010, he issued an Order

granting the Motion in part. (Dkt. 64).

Dr. Wheeler timely filed Objections to Magistrate Judge Hluchaniuk's Order. (Dkt. 65).

Defendant Responded. (Dkt. 69). The Court has reviewed the Magistrate Judge's Order, arguments

on both sides, the transcript of the April 1, 2010, hearing on this motion, and the transcript from the

December 8, 2009, hearing on related matters. For the reasons that follow, Dr. Wheeler's

Objections are SUSTAINED in part, Magistrate Judge Hluchaniuk's Order is VACATED, and State

Farm's Motion is DENIED.

## II.  BACKGROUND INFORMATION

**A.      Plaintiff's Lawsuit and Dr. Wheeler's Deposition**

Plaintiff, on behalf of her minor child, seeks insurance benefits from State Farm under the

No-Fault Act. This is Plaintiff's second lawsuit. The first lawsuit resulted in a jury verdict in

Plaintiff's favor, finding that State Farm underpaid attendant-care benefits. Despite the verdict,

State Farm immediately stopped paying continued benefits.[2] The instant lawsuit seeks unpaid

benefits since the last trial. As in the first case, it appears the primary issues in this matter relate to

---

[2]Plaintiff was injured in an automobile accident in March 2006. Plaintiff filed suit in state court in February 2007. State Farm made its first payment for attendant care benefits, totaling over $100,000, shortly before the first trial date in April 2008. State farm conceded in that trial that Plaintiff's minor child was injured as a result of an automobile accident, and that the accident was covered under the State Farm policy. The issue at trial was "what was the amount of allowable expenses owed to the Plaintiff?" The jury returned a verdict for Plaintiff on June 13, 2008. Apparently, that same day, State Farm again stopped paying benefits.

whether the Plaintiff's minor child requires attendant care, and if so, at what rate the family member providing care should be paid.[3]

NMRS provided some "behavioral technician" services for a short period in 2007. Dr. Wheeler, himself, appears to have treated Plaintiff and her minor child for approximately three years, extending into the time period relevant to this case. Dr. Wheeler represents that, at this time, NMRS has no outstanding bills in this matter and is not seeking payment as part of this lawsuit. Nevertheless, because Plaintiff contends that family-provided attendant care services should be paid at the reasonable and customary rate for institutionally-provided behavioral technician services, State Farm seeks from Dr. Wheeler certain information falling outside the boundaries of the treatment he provided.

Earlier in discovery, State Farm served Dr. Wheeler with a subpoena, seeking among other things, "amounts billed *and the amounts that were paid* to the behavioral technicians in this practice." (emphasis added). Dr. Wheeler responded to this request by letter, providing the *pay range* for a behavior technician at NMRS, and describing certain other relevant factors, such as overtime pay and fringe benefits. Unsatisfied with Dr. Wheeler's unsworn response, State Farm moved to compel Dr. Wheeler to answer the subpoena. After a hearing on that motion, Magistrate Judge Hluchaniuk denied State Farm's motion, explaining that the rate of pay of any individual providing behavioral treatment was irrelevant, and the "range of pay for people generally who provide these services . . . is the limit of relevance to this issue." (Dec. 8, 2009, Tr. at 20). The

---

[3]In this case, State Farm also may be contesting whether the minor's need for attendant care arises out of the automobile accident or from some pre-existing cognitive impairment.

Magistrate Judge also suggested that State Farm could verify the information from Dr. Wheeler's letter, under oath, at Dr. Wheeler's upcoming deposition. (*Id*. at 19).

At Dr. Wheeler's deposition, which is the subject of <u>this</u> motion, he refused to answer questions that were not related to the treatment he provided to Plaintiff and her minor child. The questions to which he objected included: (a) had he ever paid an individual greater than $8.50 an hour to do behavior technician work; (b) does he currently employ behavior technicians; (c) the ownership / business structure of NMRS; (d) whether and by whom Dr. Wheeler (a limited licensed psychologist) is supervised; and (e) whether NMRS has any bills unpaid by State Farm related to the treatment of Plaintiff's minor. Otherwise, when questions were related to the treatment Dr. Wheeler provided to Plaintiff and her family, Dr. Wheeler appeared cooperative.

State Farm now moves to compel a second deposition of Dr. Wheeler, forcing him to answer questions on the topics about which he refused to testify at the first deposition.

**B.     The Parties' Positions**

<u>State Farm's Motion</u>

State Farm argues that because Dr. Wheeler is not asserting attorney-client privilege, he has no legal basis to avoid answering any question at his deposition. State Farm claims that Dr. Wheeler cannot avoid answering questions, even if they bear no relevance to this matter, because Federal Rule of Civil Procedure 30 requires testimony to be taken subject to relevancy objections. Finally, without much in the way of explanation, State Farm asserts that the questions posed were "clearly relevant."

<u>Dr. Wheeler's Response</u>

Dr. Wheeler opposes State Farm's motion on several grounds. First, Dr. Wheeler contends that the comprehensive scope of the No-Fault Act establishes the "limited scope of discovery permitted" in these cases. Dr. Wheeler's responses to the document subpoena, and his deposition responses related to the treatment of Plaintiff and her minor child, fulfilled his obligations under that statute. According to Dr. Wheeler, because of the important legislative goals of the No-Fault Act, the Act's limitations on discovery are substantive and not procedural. Under this reading, the Federal Rules of Civil Procedure are limited by the discovery parameters established by the No-Fault Act, with the Act's limitations being supreme over the court's procedural rules. In support of this argument, Dr. Wheeler cites *Muci v. State Farm Mut. Auto. Ins. Co.*, 732 N.W.2d 88 (Mich. 2007), and M.C.L. §§ 500.3158-3159.

Dr. Wheeler also argues that, especially where NMRS and Dr. Wheeler have no unpaid bills in this case, State Farm's inquiries into the business structure, internal financial information, and supervision are not relevant and cannot lead to the discovery of any information relevant to State Farm's defenses in this matter. Dr. Wheeler claims that State Farm seeks this information purely to "harass, annoy or intimidate providers of services to State Farm customers in an effort to discourage providers from dealing with State Farm customers." To the extent State Farm's questions relate to the supervision of Dr. Wheeler's limited-licensed psychology practice, Dr. Wheeler claims they "are properly within the area of inquiry and authority of the Department of Public Health." Moreover, "supervision" of a limited licensed psychologist requires only general oversight, consultation on an "as-needed" basis, and regularly-scheduled reviews of "the practice", but does not require a supervising professional to be physically present or review each patient file.

5

Finally, Dr. Wheeler argues that because Magistrate Judge Hluchaniuk previously denied State Farm's motion to compel Dr. Wheeler to answer its subpoena (regarding the rate of pay to individual behavioral technicians), the questions at the deposition were properly limited to issues relating to the care and treatment of Plaintiff's minor.

Plaintiff's Response

Plaintiff concurs in Dr. Wheeler's Response. Plaintiff also notes that "[t]he goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v. Kelley*, 267 N.W.2d 72, 77 (Mich. 1978). The no-fault system was developed because of deficiencies in the tort system, including "[l]engthy delays . . . in compensating those injured in automobile accidents often in cases where the need for prompt compensation was strongest." *Id*. at 98.

Plaintiff also notes that State Farm cut off benefits immediately after the first trial, despite the jury verdict in Plaintiff's favor. And, Plaintiff contends that although State Farm required justification before it terminated benefits, it continues to delay by seeking broad discovery to find some support for its decision.

Plaintiff reiterates Dr. Wheeler's position that M.C.L. §§ 500.3158-3159 specifically provide for discovery of information relating to the *treatment* of an injured person. Under *Muci*, the bounds of discoverable information and method of obtaining it are substantive (controlled by the No-Fault Act) and not procedural (controlled by the Federal Rules of Civil Procedure), and are therefore binding on this court under the *Erie* doctrine.

## C. Magistrate Judge Hluchaniuk's Order

Magistrate Judge Hluchaniuk essentially dismissed Plaintiff's and Dr. Wheeler's arguments that the substantive provisions of the No-Fault Act serve to limit the bounds of permissible discovery, finding those arguments to be untimely raised:

> It seems to me that if there is an assertion that that statutory language creates limitations beyond those that would be contained in the Federal Rules of Civil Procedure, that there ought to be some hearing at the outset of the discovery process to create guidelines that greater limit the scope of discovery than – the face of the rules.
>
> . . . But if there is some assertion by some party, either party that somehow . . . the Federal Rules of Civil Procedure are limited by the substance of state law, that ought to be an argument made at the very outset of discovery and – and not halfway through the process.

(Apr. 1, 2010, Tr. at 25). Curiously, however, Magistrate Judge Hluchaniuk also posited that, as a non-party, Dr. Wheeler lacks standing to argue that, under M.C.L. § 500.3159, State Farm must first obtain an order to obtain discovery beyond the limits established by the No-Fault Act. (*Id*. at 37).

Having dispensed with this argument, Magistrate Judge Hluchaniuk reasoned that Federal Rule of Civil Procedure 30(c)(2) provides that testimony at depositions is taken subject to any objection. And, "the information sought in the questions was relevant under the standards of Rule 26(b)(1) in that even if it is not admissible evidence it could reasonably lead to the discovery of admissible evidence." The Magistrate Judge did not specify whether the inquires could lead to admissible evidence *about a claim or defense*, or were more broadly related to the subject matter of the action (which requires a showing of good cause under Rule 26).

Accordingly, the Magistrate Judge granted State Farm's motion to compel Dr. Wheeler to answer the questions at a second deposition. He ordered Dr. Wheeler to "answer questions posed to him by defendant's counsel subject only to the limitations in Rule 30(c)(2)." He explained that

State Farm's inquiry into the range of compensation paid to behavioral technicians is relevant to the litigation but questions relating to the ownership and structure of the business are "not so clearly relevant." Indeed, the Magistrate Judge found "questions beyond the superficial nature of the business structure would not be relevant to the issues in this lawsuit." Nevertheless, as a partial grant of State Farm's request that Dr. Wheeler be sanctioned for his "inappropriate objections" at the first deposition, the Magistrate Judge ordered Dr. Wheeler to pay actual costs, not including attorney fees, for the second deposition. He left open the possibility of greater sanctions, adding, "[a]ny further award of actual attorney fees or other expenses will be deferred until after the second deposition and will have to be based on a more detailed showing by defendant as to the reasonable expenses associated with the motion to compel."

## D. Dr. Wheeler's Objections

Dr. Wheeler objects to Magistrate Judge Hluchaniuk's Order and asks this Court to vacate the Order and deny State Farm's motion, or alternatively to require State Farm to submit a list of written questions to be answered or objected to under oath "so as to minimize the inconvenience to the [non-party] witness." Specifically, Dr. Wheeler objects that the Order (1) "failed to distinguish the statutorily limited discovery permitted under [the No-Fault Act] and the broad general discovery under [Fed. R. Civ. P.] 26"; (2) found that disputes about the No-Fault Act's limitations on boundaries of discovery should have been raised at the commencement of the litigation "(even though this would have been logically impossible since Mr. Wheeler is not a party to the action and had no knowledge of the dispute until subpoenaed for deposition)"; (3) is "completely inapposite to the statutory purpose underlying the [No-Fault Act] and has the effect of allowing State Farm to use the discovery process as a 'lever' to impose its will upon providers of all types, simply by

8

making overly broad demands, [and] requesting depositions (at which the provider had better have counsel appear - no matter how small the disputed bill) where the provider will be subjected to a range of questions extending far, far beyond the anticipated scope of discovery allowed by the [No-Fault Act]"; and (4) fails to recognize that Dr. Wheeler relied upon the Magistrate Judge's prior denial of State Farm's motion to compel discovery, which Dr. Wheeler contends "precluded [State Farm] from engaging in discovery not directly related to the issue of services provided to Plaintiff, allowable expenses, and the Michigan No-Fault Act."

## III. ANALYSIS

### A.      Review of Non-Dispositive Order Of A Magistrate Judge

Non-dispositive orders issued by a magistrate judge are governed by 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a).  Collectively, these rules permit this Court to reconsider Magistrate Judge Hluchaniuk's Order if Plaintiff has demonstrated that it is "clearly erroneous or contrary to law."  A factual finding is "'clearly erroneous' when, although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Hagaman v. Comm'r of Internal Revenue*, 958 F.2d 684, 690 (6th Cir. 1992) (citation omitted).  A legal conclusion is "contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Ford Motor Co. v. United States*, No. 08-12960, 2009 WL 2922875 (E.D. Mich. Sept. 9, 2009) (quoting *SEC v. McKnight*, No. 08-11887, 2009 WL 1107675 (E.D. Mich. Apr. 22, 2009)).

### B.      The No Fault Act Imposes Limits On Discoverable Information

The Michigan Supreme Court has repeatedly recognized that the No-Fault Act is comprehensive legislation designed to provide victims of motor vehicle accidents with "assured,

adequate, and prompt reparation for certain economic losses." *Shavers,* 267 NW.2d at 77. "Because

personal protection insurance benefits are mandated by the no-fault statute, the statute is the 'rule

book' for deciding issues involved in questions regarding awarding those benefits." *Cruz v. State*

*Farm Mut. Auto. Ins. Co.*, 614 N.W.2d 689, 693 (Mich. App. 2000) [hereinafter *"Cruz I"*] (citing

*Rohlman v. Hawkeye-Security Ins. Co.*, 502 N.W.2d 310, 313 (Mich. 1993)). And because the No-

Fault Act is remedial in nature, it must be liberally construed in favor of the persons intended to

benefit from it. *Turner v. Auto Club Ins. Ass'n*, 528 N.W.2d 681, 684 (Mich. 1995).

In the comprehensive No-Fault Act, the Legislature established certain "statutorily-required

information" to which insurers are entitled when investigating a claim for benefits and defined the

discovery tools available to insurers in conducting their investigations. *See Cruz I*, 614 N.W.2d at

693 ("the no-fault act sets forth . . . duties of cooperation"; it "also provides insurers with a means

for gathering information regarding a claimant's . . . medical history, condition, and treatment.").

*See also Cruz v. State Farm Mut. Auto. Ins. Co.*, 648 N.W.2d 591, 598 and n. 16 [hereinafter "*Cruz*

*II*"] (recognizing that the No-Fault Act establishes boundaries of "statutorily required information",

and M.C.L. § 500.3159 imposes limitations on the discovery available during litigation). The parties

to an insurance contract may contractually expand the discovery tools available (presumably only

as between the parties to that contract), but any attempt to impose a greater obligation on the insured

is contrary to public policy and invalid. *See Cruz II,* 648 N.W.2d at 594-98, and n. 14.

In *Muci*, the case primarily relied on by Dr. Wheeler, State Farm advanced the position Dr.

Wheeler now takes regarding the interaction between court rules and the provisions of the No-Fault

Act. *Muci*, 732 N.W.2d at 91. In that case, State Farm objected to a state court order imposing

conditions on an independent medical examination. The conditions were consistent with and

imposed pursuant to M.C.R. 2.311 – the state court rule on medical examinations – which the trial court found could supplement the no-fault procedures. *Id*. State Farm argued that the No-Fault Act's discovery provisions controlled, rather than the court rules, and the court could not impose additional conditions on the examination without a showing of good cause under M.C.L. § 500.3159. *Id*. at 91-93. The Michigan Supreme Court discussed the Act's comprehensive nature: "it was designed to cover contingencies that could arise, including, as relevant here, the process for making a claim, the procedures for investigation by the insurer, and the range of available enforcement tools. All of which are found within the four corners of the act." *Id*. at 94 (emphasis added). The Court also considered the "Legislature's obvious intent shown throughout the no-fault act to treat automobile accident cases falling within the scope of the act differently", *id*. at 95, and referenced certain policy goals of the Act, including "economy in the handling of claims to reduce transaction costs", *id*. at 94, and an insured's "guarantee[] . . . [of] a sufficient and expeditious recovery from his or her own insurer for all expenses for reasonably necessary medical care . . . ." *Id*. at 93. Ultimately, the Court adopted State Farm's position, holding that due to the comprehensive nature of the No-Fault Act, and the policy rationale underlying the Act, the discovery provisions of the Act "are substantive, not procedural, and are supreme over the court rule." *Id*. at 96 (emphasis added).

As it relates to the instant dispute, Dr. Wheeler contends that M.C.L. § 500.3158 establishes the boundaries of information to which a no-fault insurer is entitled from a treatment provider in a dispute involving no-fault benefits:

> (2) A physician, hospital, clinic or other medical institution providing, before or after an accidental bodily injury upon which a claim for . . . benefits is based, any . . . service or accommodation in relation to that or any other injury, or in relation to a condition claimed to be connected with that or any other injury, if requested to do so by the insurer against whom the claim has been made, (a) shall furnish forthwith a written report of the history, condition, treatment and dates and costs of treatment of

11

the injured person and (b) shall produce forthwith and permit inspection and copying of its records regarding the history, condition, treatment and dates and costs of treatment.

(emphasis added).

And M.C.L. § 500.3159 establishes enforcement mechanisms for disputes regarding the scope of discovery in no-fault cases:

> In a dispute regarding an insurer's right to discovery of facts . . . about [an injured person's] history, condition, treatment and dates and costs of treatment, a court may enter an order for the discovery. The order may be made only on motion for good cause shown and upon notice to all persons having an interest, and shall specify the time, place, manner, conditions and scope of the discovery. A court, in order to protect against annoyance, embarrassment, or oppression, as justice requires, may enter an order refusing discovery or specifying conditions of discovery and may order payments of costs and expenses of the proceeding, including reasonable fees for the appearance of attorneys at the proceedings, as justice requires.

(emphasis added).

Thus, Dr. Wheeler argues that under M.C.L. § 500.3158, State Farm is entitled to information regarding the Plaintiff's "history, condition, treatment and dates and costs of treatment [*i.e.* amounts billed to and paid by State Farm]", but no more. And, if State Farm believes it *needs* more – something certainly "in dispute" – it may move for an order permitting broader discovery, *upon good cause shown,* in accordance with § 3159.

Plaintiff and Dr. Wheeler have repeatedly argued that *Muci* elevated the No-Fault Act's discovery provisions to the status of substantive law, binding on this Federal Court and supreme over the Federal Rules of Civil Procedure.[4] Before now, State Farm simply ignored the argument.

---

[4]Both Plaintiff and Dr. Wheeler cited *Muci* in their Response briefs, and again at the hearing. In his objections, Dr. Wheeler now claims that the Magistrate Judge's failure to consider *Muci* amounts to clear error.

But in response to Dr. Wheeler's objections, State Farm now contends that *Muci* is limited to disputes regarding the scope of independent medical examinations.

I read *Muci*'s reach to be more broad than State Farm suggests. As noted, the Michigan Supreme Court found that "the procedures for investigation by the insurer, and the range of available enforcement tools" were "found within the four corners of the act." The discovery provisions of the act were founded on broad policy goals to treat no-fault cases differently, and provide for economic and efficient claims-handling and expeditious recovery by injured persons. Under Michigan law, those policy goals, which extend beyond the dispatch of judicial administration, justify the treatment of the discovery provisions as substantive law, supreme over state and federal court rules. *McDougall v. Schanz*, 597 N.W.2d 148, 155-56 (Mich. 1999). Although *Muci* was concerned with medical examinations, the analysis and holding are applicable to this dispute as well.

When considered in the light of *Cruz* and *Muci*, I read M.C.L. §§ 500.3158 and 500.3159 to establish limitations on the boundaries of relevant and discoverable information in a no-fault case, and to further provide the means by which insurers may gather that information.

State Farm also argues that under *Muci*, it is the burden of the person opposing discovery to move under § 500.3159 for an order limiting discovery, and, any such limitations may be imposed only upon a showing of good cause. I disagree. In *Muci*, the court found that the No-Fault Act established a presumptive right of the insurer to have the insured submit to a medical examination without court-imposed conditions. Because the insured sought to deviate from the act's defined discovery parameters, it was the insured's burden to seek an order and establish good cause for imposing conditions under § 500.3159. But in this case, it is State Farm that seeks to expand the boundaries of permissible discovery under the No-Fault Act. Therefore, it is State Farm that must

13

move – and establish good cause – for obtaining discovery beyond the statutorily-required information. State Farm has not so moved; nor has it demonstrated good cause.

**C.      The Federal Rules of Civil Procedure Also Support Dr. Wheeler's Position**

Even under the Federal Rules of Civil Procedure, State Farm is entitled to non-privileged information only if it is "relevant to any party's <u>claim or defense</u>." Fed. R. Civ. P. 26(b)(1) (emphasis added). Otherwise, State Farm must establish "<u>good cause</u>" to obtain an court order for discovery "<u>relevant to the subject matter involved in the action</u>." *Id*. (emphasis added). Relevance includes discovery reasonably calculated to lead to the discovery of admissible evidence. *Id*.

In this case, State Farm contends that the wage paid by NMRS to its behavioral technicians is relevant to its defense because there is a dispute about the rate at which family-provided care should be paid. But NMRS employed just two behavioral technicians who provided care to Plaintiff's minor *in 2007* – well before the relevant time period in this action. As such, Dr. Wheeler's involvement in *this trial* is limited to *his services* as a limited-licensed psychologist – a subject about which he willingly testified at his deposition. Dr. Wheeler further testified that *he has no opinion regarding the reasonable rate for the care at issue* in this case. (Wheeler Dep. at 67). Instead, the parties each have employed experts to testify about the reasonable pay for the care that Plaintiff's minor requires. Accordingly, for State Farm to be entitled to discovery about NMRS's current employment of and pay to behavioral technicians, the relevance must be based solely on the fact that NMRS has, at least in the past, employed behavioral technicians. I think that such a finding

is too broad. At some point, the inquiry crosses the line into questions designed to annoy and harass; I think that line has been crossed in this case.[5]

As to State Farm's inquiry into the ownership and business structure of NMRS and supervision of Dr. Wheeler, I fail to see how those questions reasonably could lead to the discovery of admissible evidence regarding any claim or defense in this matter. At this point, neither Dr. Wheeler nor NMRS has any outstanding bills. Accordingly, although State Farm raised it in the hearing, it is not asserting any defense that Dr. Wheeler's care is not reimbursable because it was not lawfully rendered.[6] And, again, State Farm has not established good cause to obtain the broader discovery relevant to the "subject matter" of this action.

## D.      Ruling On The Objections

For the foregoing reasons, I SUSTAIN Dr. Wheeler's first three objections. I find that Magistrate Judge Hluchaniuk's Order (1) failed to distinguish the statutorily-limited discovery under the No-Fault Act and the broad discovery generally available under Fed. R. Civ. P. 26; (2) inappropriately required that disputes about the No-Fault Act's limitations on discovery should have been raised at the commencement of the litigation, especially when Dr. Wheeler, as a non-party, could not have raised this dispute at that time; and (3) is inapposite to the statutory-purpose

---

[5]As Plaintiff's counsel argued, presumably State Farm would not pursue the same lines of questioning with a large provider. If Beaumont Hospital would not be compelled to disclose what it pays to its employees, its ownership and corporate structure, and compliance with State licensing requirements, simply because it provided some treatment to Plaintiff, neither should this smaller provider be so compelled.

[6]If Dr. Wheeler submits further bills for payment, State Farm is not precluded from raising the "unlawfully-rendered services" defense. Of course, if the public records show that Dr. Wheeler *is* properly licensed, State Farm may have an uphill battle to wage. State Farm's prior payment history to Dr. Wheeler also suggests that State Farm recognizes that he is properly licensed, and any argument to the contrary is specious.

15

underlying the No-Fault Act and has the effect of allowing State Farm to use the discovery process to seek overly broad discovery outside the boundaries permitted by the No-Fault Act.

Because the Magistrate Judge's prior denial of State Farm's motion to compel answers to its document subpoena did not limit State Farm to inquiring only about services provided to Plaintiff, Plaintiff's fourth objection is OVERRULED.

## IV.  CONCLUSION

For the foregoing reasons, I find that Dr. Wheeler has satisfied his burden of establishing that Magistrate Judge Hluchaniuk's Order was contrary to law.  The Magistrate Judge failed to consider the statutory limitations on discoverable information established by the No-Fault Act, which limitations are substantive under Michigan law and binding on this Court under the *Erie* doctrine. Moreover, I find that State Farm seeks information not reasonably calculated to lead to the discovery of admissible evidence on any *claim or defense*, and State Farm has not established good cause to obtain an order to broaden the bounds of discovery as required by Rule 26(b)(1).

Accordingly, Plaintiff's Objections are SUSTAINED in part and OVERRULED in part. Magistrate Judge Hluchaniuk's Order (Dkt. 64) is VACATED, and State Farm's Motion to Compel Dr. Wheeler To Answer Questions At A Deposition (Dkt. 45) is DENIED.

**IT IS SO ORDERED.**

Date:   June 4, 2010                                  s/ John Feikens
                                                     John Feikens
                                                     United States District Judge

16

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on June 4, 2010 by U.S. first class mail or electronic means.

s/Carol Cohron

Case Manager